# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Eugene Allan, Deborah F. Allan, Keith
Landen, Matthew J. Cavendish, and
Traci Cavendish, on behalf of
themselves and others similarly situated,

                 Plaintiffs,

vs.

Realcomp II, Ltd., a Michigan Profit
Corporation, *et al*.

                 Defendants.

Case No. 2:10-cv-14046

Hon. Steven J. Murphy, III

Magistrate Judge R. Steven Whalen

# PLAINTIFFS' UNOPPOSED MOTION FOR
# FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23(e), plaintiffs request final approval of the parties' class action settlement agreement.  In support of this motion, plaintiffs rely upon the facts and law set forth in the accompanying brief and exhibits.

**Local Rule 7.1 Certification.**  Before filing this motion and the attached brief, plaintiffs' counsel emailed them to defendants' counsel and inquired whether the motion would be opposed.   Defendants' counsel does not oppose this motion.

Respectfully Submitted,

GOLDMAN SCARLATO KARON & PENNY, PC
Brian D. Penny
Attorneys for Plaintiffs
101 East Lancaster Avenue, Suite 204
Wayne, PA 19087
(484) 342-0700
penny@gskplaw.com

BARRIS, SOTT, DENN & DRIKER, PLLC
By:   /s/Erica Fitzgerald
      Todd R. Mendel (P55447)
      Erica Fitzgerald (P64080)
Attorneys for Plaintiffs
211 West Fort Street, 15th Floor
Detroit, MI  48226
(313) 965-9725
tmendel@bsdd.com
efitzgerald@bsdd.com

Dated:  August 6, 2014

441867

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Eugene Allan, Deborah F. Allan, Keith
Landen, Matthew J. Cavendish, and
Traci Cavendish, on behalf of
themselves and others similarly situated,

                Plaintiffs,

vs.

Realcomp II, Ltd., a Michigan Profit
Corporation, *et al*.

                Defendants.

Case No. 2:10-cv-14046

Hon. Steven J. Murphy, III

Magistrate Judge R. Steven Whalen

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# Table of Contents

CONCISE STATEMENT OF THE ISSUES PRESENTED .................................. ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE
RELIEF SOUGHT ................................................................................................ iii

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................1

   I.  Litigation and Class Certification.................................................................1

   II. Order Preliminarily Approving the Settlement .............................................2

   III. Notice ..........................................................................................................3

       A. Distribution of Notice.................................................................................3

       B. Responses to Notice...................................................................................5

ARGUMENT ......................................................................................................5

   I.  Standard for Final Approval of Class Action Settlement..............................5

   II. This Court Should Approve the Settlement Because It Is Fair,
       Reasonable and Adequate............................................................................7

       A. Summary of Settlement .............................................................................7

       B. The Seven *UAW v. General Motors* Factors Weigh in Favor of Final
          Approval....................................................................................................8

          1. The Resolution of a Legitimate Legal and Factual Dispute ..............8

          2. The Complexity, Expense and Likely Duration of the Litigation ....11

          3. The Opinions of Class Counsel and Class Representatives..............12

          4. The Amount of Discovery Engaged in By the Parties......................14

          5. The Reaction of Absent Class Members..........................................16

          6. The Risk of Fraud or Collusion .......................................................17

          7. The Public Interest ..........................................................................18

CONCLUSION ..................................................................................................18

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1.      This Court preliminarily approved the parties' settlement agreement on May 29, 2014, and notice has since been provided to the class members as ordered by this Court.  After the fairness hearing on August 19, 2014, should this Court grant final approval of the settlement agreement?

## CONTROLLING OR MOST APPROPRIATE
## AUTHORITY FOR THE RELIEF SOUGHT

Fed. R. Civ. P. 23(e)

*UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

## INTRODUCTION

This Court preliminarily approved the parties' settlement agreement as "fair, reasonable, adequate, and in the best interests of the class" on May 29, 2014. (Dkt. No. 220 at 2.) Since then, notice has been provided to the class members as ordered by this Court. After the fairness hearing on August 19, 2014, this Court should grant final approval of the settlement agreement because all the factors to be considered in the Sixth Circuit weigh in favor of final approval. Defendants do not oppose this motion.

## BACKGROUND

### I.    Litigation and Class Certification

This antitrust action was filed on October 8, 2010, on behalf of all persons who purchased Exclusive Right to Sell real estate brokerage services in the Realcomp II, Ltd. ("Realcomp") multiple listing service area between May 1, 2004 and April 27, 2007. (Dkt. No. 1.) Plaintiffs Eugene Allan, Deborah F. Allan, Keith Landen, Matthew J. Cavendish, and Traci Cavendish alleged, among other things, that the defendants[1] violated Section 1 of the Sherman Act when they

---

[1] The remaining defendants are Realcomp II, Ltd. ("Realcomp"), Dearborn Board of Realtors, Detroit Association of Realtors, Eastern Thumb Association of Realtors, Livingston Association of Realtors, Metropolitan Consolidated Association of Realtors, North Oakland County Board of Realtors, Western Wayne Oakland County Association of Realtors, Weir, Manuel, Snyder & Ranke, L.L.C., Real Estate One, Inc., Darralyn C. Bowers, Richard Knezek, Alissa Nead, Douglas Hardy, and Thomas R. Rademacher.

allegedly conspired to regulate listings on and membership in the Realcomp multiple listing service. *Id.* at ¶¶ 216-222. Plaintiffs alleged that such practices blocked competition from discount brokers and caused commission rates in the Realcomp service area to be artificially high. Plaintiffs, on behalf of a class of similarly situated individuals, sought treble damages, attorney fees, and costs. *Id.* at 44. Defendants have denied and continue to deny these allegations.

This Court certified a class on March 30, 2013, pursuant to Fed. R. Civ. P. 23(b)(3). (Dkt. No. 199.) The class definition is "all purchasers of Exclusive Right To Sell real estate brokerage services for residential properties in the Realcomp MLS Service Area from May 1, 2004 through April 27, 2007." *Id.* at 14. The class consists of several thousand individuals. After several formal mediation sessions facilitated by two neutral parties and after much arm's-length negotiation, the parties ultimately agreed to settle this dispute. (Ex. A, Settlement Agreement.)

## II.     Order Preliminarily Approving the Settlement

On May 29, 2014, the Court preliminarily approved the settlement agreement. (Dkt. No. 220). The Court found that "the parties engaged in arm's-length negotiations and arrived at the proposed settlement after thorough investigation and discussion, and that [the] proposed settlement is fair, reasonable, adequate, and in the best interests of the class." *Id.* at 2. The Court approved the

proposed form of notice and method of distribution, finding that they "are reasonably calculated to provide fair notice to interested parties of the pendency of the action and afford them an opportunity to object". *Id.* at 6.  The Court scheduled a final approval hearing for August 19, 2014.  *Id.* at 3.  Objections, exclusions, attorney appearances, and notices of intention to appear were due by August 5, 2014.  *Id.* at 3-5.

## III.   Notice

### A.   Distribution of Notice

Pursuant to Rule 23(e), the Court ordered notice as follows:

- The long-form notice was to be sent via first class mail to all class members that were identified through Realcomp's records as supplemented by a skip-trace process.  *Id.* at 6.

- Any returned mail was to be re-mailed once if possible, either to a forwarding address or upon further research.  *Id.* at 6-7.

- The short-form notice was to be published in the Detroit Free Press.  *Id.* at 7.

Claims Administrator Angeion Group ("Angeion") compiled a list of current mailing addresses for 64,132 potential class members.  (Ex. B, Walsh Declaration, ¶ 5.)  These addresses were derived from Defendant Realcomp's database, verified through Experian's deed trace service, and then updated through a skip-trace process.  *Id.* ¶¶ 4-5.  On or before June 4, 2014, Angeion mailed the approved long-form notice to 64,132 identified, potential class members.  *Id.*  A total of

8,328 were returned as undeliverable. *Id.* ¶ 19.  That means that at least 55,804 –

87% – reached the intended recipient on the first attempt.  *Id.*  As of August 1,

2014, 202 of the undeliverable notices had been re-mailed to a forwarding address,

and 730 had been re-mailed after further research, increasing the percentage of

notices that reached the intended recipient to at least 88%.  *Id.*

  Angeion arranged for the approved short-form notice to be published in The

Detroit Free Press on June 9, 2014.  *Id.* ¶ 14.  Although not required by this Court,

Angeion also published, after consultation with defense counsel, the short-form

notice as a reminder in local C&G newspapers in Wayne, Oakland, and Macomb

Counties on July 30 and 31, 2014, and in the Livingston County Daily Press &

Argus on July 25, 2014.  *Id.* ¶ 16.  On July 21, 2014, Angeion sent 54,449

reminder notices via postcard to all class members who had not yet responded,

which was also above and beyond the Court-required notice.  *Id.* ¶ 15.

  Angeion also set up a website, www.RealcompSettlement.com, where class

members can view the notice and other important documents and download a

claim form, and a telephone call center, where potential class members could get

information regarding the settlement, request a claim form, and get assistance from

a live operator as desired.  *Id.* ¶¶ 7-8.

  In addition to the notice requirement in Rule 23(e), the Class Action Fairness

Act, 28 U.S.C. § 1711 *et seq.* ("CAFA") requires settling defendants to notify the

"appropriate" state and federal officials after a proposed class action settlement is filed with the Court.  28 U.S.C. § 1715(b). Plaintiffs understand that Defendants have complied with the CAFA notice requirement.  (Dkt. No. 218.)

## B.  Responses to Notice

The following describes the responses to the notice:

- Four class members have opted out.  (Ex. B ¶ 12.)

- One class member has objected, but on grounds unrelated to this action and without evidence as required by this Court's order.  *Id.* ¶ 13; Dkt. No. 221.

- As of August 5, 2014, 1,977 class members have returned a claim form.  (Ex. B ¶ 11.)

- The call center has received 724 calls.  *Id.* ¶ 18.

- The website has received 2,227 visits.  *Id.* ¶ 7.

## <u>ARGUMENT</u>

## I.  Standard for Final Approval of Class Action Settlement

Class action settlement approval is governed by Rule 23(e).  Fed. R. Civ. P. 23(e).  The Court's role in reviewing class action settlements is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878, 880 (6th Cir.

1986) (per curiam) (internal quotation marks and citation omitted).  The Court's only role is to approve or disapprove the settlement; it cannot modify it.  *Detroit Police Officers Ass'n v. Young*, 920 F. Supp. 755, 761 (E.D. Mich. 1995).

Court approval of class action settlements generally involves two stages. The first step, preliminary approval by this Court, has already been granted.  (Dkt. No. 220.)  As to the second step (the fairness hearing and final approval), the "ultimate issue" for the Court will be whether the proposed settlement "is fair, adequate and reasonable" after a hearing.  *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).  At that stage, the Court should consider several factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

The approval of a class action settlement as fair, adequate, and reasonable is within the district court's discretion.  *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008).  "In exercising that discretion, the Court may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision[,] and the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits."  *In re Packaged Ice Antitrust Litig.*, 2012 U.S.

Dist. LEXIS 162459, **35-36 (E.D. Mich. Nov. 13, 2012) (internal quotations omitted).

Class action settlements are favored. *Carson v. American Brands, Inc*., 450 U.S. 79, 88 n. 14 (1981); *UAW*, 497 F.3d at 632 (noting "the federal policy favoring settlement of class actions"); *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Halliday v. Weltman*, 2013 U.S. Dist. LEXIS 24184, *6 (E.D. Mich. Feb. 22, 2013) ("[T]he public interest favors the resolution of the class claims in an orderly, efficient manner").  Settlement conserves judicial resources by avoiding further litigation and allows parties to avoid the costs and risks of a long, complicated and expensive trial, particularly in an antitrust action. Settlement may also provide the best method of distributing damage awards to plaintiffs, especially from a limited fund that might be exhausted before all claimants receive awards.

## II.    This Court Should Approve the Settlement Because it Is Fair, Reasonable and Adequate

The settlement should be approved because it is fair, reasonable and adequate and because each of the seven factors to be considered weighs in favor of approval.

### A.    Summary of Settlement

The parties engaged in arm's-length negotiations over several years.  In 2012, the parties first met with William Sankbeil in an all-day mediation session

that was ultimately unsuccessful.  In 2013, the parties again engaged in mediation in two separate sessions facilitated by Magistrate Whalen.  Counsel met several more times and, beginning in fall 2013, conducted private settlement negotiations over several weeks.  Those efforts finally culminated in the settlement agreement presented to the Court on March 5, 2014.  (Dkt. No. 217.)

That settlement requires Realcomp to deposit $3.25 million over time to a common fund, which will be distributed under the settlement agreement to responding class members *pro rata* based on the commission they paid.  (Ex. A.) The named plaintiffs will receive a lump sum, and the attorneys will ask the Court to award them one-third of the common fund for attorney fees.  *Id.*  Upon full payment, the parties will release one another from all claims, causes of action and damages, as described in the Agreement.  *Id.* at IV.A-B.  If the Court grants final approval of the settlement, the case will be dismissed after the final deposit has been made to the common fund.  *Id.* at VII.  This Court will retain jurisdiction for purposes of administration, enforcement, and interpretation of the Agreement.  *Id.*

### B. The Seven *UAW v. General Motors* Factors Weigh in Favor of Final Approval

#### 1. The Resolution of a Legitimate Legal and Factual Dispute (Likelihood of Success on the Merits)

In determining whether the relief offered in a settlement outweighs a plaintiff's chances of ultimate success on the merits, the Court "recognizes the

uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583, 594 (E.D. Mich. 2006). The Court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

Here, the settlement agreement resolves genuine legal and factual disputes. While the named plaintiffs are confident in their case, they recognize that a jury trial might have turned on close questions of proof, many of which would be the subject of complicated expert testimony, making the trial outcome highly unpredictable for all parties. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("Antitrust litigation in general, and class action litigation in particular, is unpredictable . . . [T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal"); *Sheick v. Automotive Component Carrier LLC*, 2010 U.S. Dist LEXIS 110411 (E.D. Mich. Oct. 18, 2010) (finding that the potential of recovering "absolutely nothing" after a full-blown trial was a significant factor favoring final approval).

Moreover, even after a trial is concluded, there would very likely be one or more lengthy appeals. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) (noting that "[i]t must also be recognized that victory even at the trial stage is not a guarantee of ultimate success" and noting the reversal of a multimillion dollar judgment); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (granting approval where "[d]elay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait for years for any recovery, further reducing its value").

In contrast, the $3.25 million common fund created by Realcomp for the benefit of the class provides certainty. (Ex. A at III.A.)  It became 50% funded on July 30, 2014, and will be fully funded by April 30, 2015. *Id.*  At that time, class members who have submitted valid claim forms will be entitled to share the common fund. *Id.* at III.E.  The claims administrator will determine the share of the settlement fund to which each claimant is entitled, based on the commission paid by each claimant, but in no event shall any claimant's award exceed 25% of the total commissions paid by the claimant. *Id.*  At this point, with 1,977 of class members responding, each respondent is likely to receive a substantial recovery, with the average recovery currently estimated to be approximately $835.00.

Any money remaining in the common fund after the valid claims and fees have been paid will be distributed to Habitat for Humanity Detroit or to another

501(c)(3) charity in the Detroit area that is dedicated to providing housing assistance to the poor as approved by this Court. *Id.* at III.E.

Balanced against the uncertainty at trial, the shared common fund will provide substantial cash benefits to the responding class members. This factor weighs in favor of settlement approval.

### 2.     The Complexity, Expense and Likely Duration of the Litigation

Settlements should represent "a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed." *Williams*, 720 F.2d at 922. Continued litigation against these defendants would have involved a lengthy trial and considerable effort to prepare the case for trial. Those efforts would have been very expensive and would have involved wrestling with complex legal, factual and economic issues, particularly relating to the presentation of experts and complex damages issues. Based on counsel's experience with comparable MLS antitrust litigation and on the expenses incurred thus far in pursuing this action, the expense of continuing to employ economists to testify at trial would easily amount to several hundred thousand dollars for each side. Plus, the Court would expend significant resources of its own on the proceedings.

Given the uncertainty of antitrust litigation, this settlement represents a fair and reasonable resolution of this matter for the class. Considering the complexity, expense and likely duration of the litigation, the risks of establishing liability and

damages, the reasonableness of the settlement fund, and the risk of collecting any possible judgment, the agreement falls well within the possible range of approval as a fair, reasonable, and adequate settlement.  This weighs in favor of final approval.  *Griffin v. Flagstar Bancorp, Inc.,* 2013 U.S. Dist. LEXIS 173702 (E.D. Mich., Dec. 12, 2013) (approving final settlement, where, among other things, conducting merits and expert discovery would be time-consuming and costly and dispositive motions, trial and appeals would be expensive and burdensome).

### 3.    The Opinions of Class Counsel and Class Representatives

Class counsel's judgment that settlement is in the best interests of the class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick*, 2010 U.S. Dist. LEXIS at *51; *see also Date v. Sony Electronics, Inc.*, 2013 U.S. Dist. LEXIS 108095, *28 *et seq.* (E.D.Mich. July 13, 2013).

To begin, this Court found that class counsel was "well-qualified to serve as class counsel and will also fairly and adequately represent the interest of the class." (Dkt. No. 199 at 25.)  Plaintiffs' counsel are experienced antitrust class action and commercial litigators who conducted a diligent and extensive investigation into the merits of Plaintiffs' claims.  When settlement was reached, plaintiffs' counsel thoroughly understood the facts of the case and the strengths and weaknesses of the parties' positions.  Some of plaintiffs' counsel performed many of the same functions in three other closely related class actions in federal district courts in

Pennsylvania and South Carolina and thus were very experienced in the subject matter of this litigation.

With the benefit of this considerable experience and knowledge of their claims, plaintiffs' counsel and the class representatives have decided it is in the best interests of the class to resolve this action and so have agreed to this settlement.  Plaintiffs' counsel worked closely with the class representatives for four years.  The class representatives have been diligent in their assistance to counsel and vigilant in their efforts to prosecute this action on behalf of the class.

In negotiating the settlement, plaintiffs' counsel considered:

(1) the substantial benefits available to plaintiffs and the class under the Settlement Agreement;

(2) the risks and uncertainty of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation;

(3) the inherent risk that any large judgment against one or more defendants may be uncollectable;

(4) the risk that the Court will grant some or all of the outstanding motions for summary judgment and/or judgment on the pleadings; and

(5) the desirability of consummating this Settlement Agreement promptly to provide effective relief to plaintiffs and the class.

Plaintiffs are satisfied with their counsel's recommendation and believe that the results are in the best interests of all class members.

This Court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."  *Williams*, 720 F.2d at 922-23.

Thus, this factor weighs heavily in favor of final approval here.

### 4.    The Amount of Discovery Engaged in By the Parties

The amount of discovery conducted in this action weighs heavily in favor of approval.  The discovery and proceedings to date, as described below in this section, are more than sufficient "to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement" and to permit this Court "to intelligently approve or disapprove the settlement."  *Int'l Union v. Ford Motor Co.*, 2008 U.S. Dist LEXIS 66899, *74-75 (E.D. Mich. Aug 29, 2008).

Before and during this action (including during settlement negotiations), plaintiffs' counsel and their experts conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the action and to determine how best to serve the interests of plaintiffs and the class.  In the course of their representation, plaintiffs' counsel:

(1) obtained relevant MLS listing data from third-party multiple listing services;

(2) reviewed numerous deposition transcripts, briefs, documents and real estate transactional data, including the details of thousands of real estate transactions in the Realcomp service area and other comparable MLS service areas;

(3) successfully defended the sufficiency of the complaint's allegations against certain defendants' motion to dismiss; and brought several additional procedural, evidentiary and discovery motions;

(4) conducted an extensive search and review of studies, reports and documents relating to similar allegations of anticompetitive conduct in real estate markets across the country;

14 of 19

(5) retained the services of two well-respected experts, an economist and a seasoned real estate professional, both of whom performed thorough analyses of the pertinent data and information and prepared a preliminary damages analysis and a market report submitted on class certification;

(6) defended the depositions of plaintiffs' economist and market expert;

(7) engaged in extensive briefing and discovery relating to class certification;

(8) deposed defendants' economic expert on class certification;

(9) defended the depositions of each of the five class representatives;

(10) defeated several attempts to exclude the testimony of plaintiffs' economist[2];

(11) obtained certification of a class consisting of all purchasers of Exclusive Right To Sell real estate brokerage services for residential properties in the Realcomp MLS Service Area from May 1, 2004 through April 27, 2007;

(12) briefed oppositions to six motions for summary judgment and/or judgment on the pleadings that were outstanding when the parties reached settlement; and

(13) prepared for and participated in three formal mediation sessions, one with professional mediator William Sankbeil and two with Magistrate Judge R. Steven Whalen, as well as several additional informal settlement conferences.[3]

Based on these proceedings and discovery, the parties are well positioned to recognize the strengths and weaknesses of this case. This strongly supports final approval of the settlement. *Date* at *29 (finally approving settlement "after years of protracted litigation, . . . production of over 27,000 documents, depositions

---

[2] Motions for reconsideration were pending when the settlement agreement was signed.

[3] Most of these facts are a matter of public record and are not likely to be disputed.

of . . . witnesses, and full briefing and oral argument on the issue of class

certification.").

### 5.    The Reaction of Absent Class Members to Notice

For the settlement to be granted final approval, notice to the class members

must be adequate.  *Date,* 2013 U.S. Dist. LEXIS 108095, *13 *et seq*.  Rule 23(e)(1)

provides that a settlement may be approved only if the Court "direct[s] notice in a

reasonable manner to all class members who would be bound by the proposal."

Fed. R. Civ. P. 23(e)(1).

Notice has been provided pursuant to this Court's preliminary approval

order.  (Dkt. No. 220 at 6-7.)  In fact, the parties have gone beyond the notice

required by the Court.  As discussed above, a total of 66,007 notices (original and

re-mailing) have been mailed, and 54,449 reminder notices have been sent.  (Ex.

B.)

The key concern is whether notice actually reached the class members.  *In re*

*Serzone Prods. Liability Litig.*, 231 F.R.D. 221 (S.D. W.Va. 2005) ("[T]he

adequacy of notice is measured by whether notice reached Class Members and

gave them an opportunity to participate, not by actual participation."); *Zimmer*

*Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 92-93 (3d Cir. 1985)

(holding that where defendant engaged in court-approved notice procedure,

response rate was not determinative of the adequacy of the class notice.); 3 Alba

Conte & Herbert Newberg, Newberg on Class Actions § 8.45 (4th ed. 2002)

("Claims response levels will tend to vary with the circumstances, types of class

notices employed, and size of individual claims involved in each case.").[4]   Class

counsel, in consultation with defense counsel, went above and beyond the

approved notice plan, sending a reminder postcard and publishing reminder notices

in several widely circulated local newspapers.   As described above, it is estimated

that nearly 90% of the identified potential class members have been reached.

There have been only four opt-outs.   There has been only one "objection".[5]

Thus, it is clear that absent class members have no relevant objections to the

settlement.   These facts weigh strongly in favor of final approval of the settlement.

### 6.   The Risk of Fraud or Collusion

Courts presume the absence of fraud or collusion unless contrary evidence is

offered.   *Int'l Union v. Ford Motor Co*., 2006 U.S. Dist. LEXIS 70471 (E.D. Mich.

---

[4] The response rate is not evidence of insufficient notice.   *See, e.g., In re Packaged Ice Antitrust Litig*., 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec. 13, 2011) (approving settlement even though only 1% responded to notices and noting that this rate is frequently less than 5%); *Touhey v. United States*, 2011 U.S. Dist. LEXIS 81308 (C.D. Cal. July 25, 2011) (approving settlement even though only 2% responded to notices); *In re New Motor Vehicles Canadian Export Antit. Litig*., 2011 U.S. Dist. LEXIS 40843 (D. Maine April 13, 2011) (approving settlement with a 3.9% response rate).

[5] Brian Marentette complains that Real Estate One failed to disclose the zoning, fraudulently misrepresented garage roof repairs, and was involved with an exchange of stoves.   None of his complaints relate to the MLS or to payment of commissions.   (Dkt. No. 221.)

July 13, 2006).  Here, the Court no doubt witnessed the passionate advocacy of counsel on both sides of this action.  There was no collusion here, and counsel on both sides acted in good faith and in the best interests of their respective clients at all times.  This factor weighs in favor of final approval.

### 7.   The Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *In re Cardizem*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).  No countervailing public interests suggest disapproval of the settlement, nor have any class members opted out or objected on relevant grounds.  To the contrary, the public is served by open and fair competition in the real estate marketplace, which is fostered by this settlement. This factor weighs in favor of final approval.

With all seven factors weighing in favor of approval, this Court should grant final approval of the settlement.

### CONCLUSION

A proposed final order was initially attached as Exhibit 3 to the Settlement Agreement.  (Ex. A.)  That proposed order is re-attached here, with some of the blanks filled in, as Exhibit C.  This Court should grant final approval of the settlement because it is fair, adequate and reasonable.

Respectfully Submitted,

GOLDMAN SCARLATO KARON &          BARRIS, SOTT, DENN & DRIKER,
PENNY, PC                        PLLC
Brian D. Penny                   By:   /s/Erica Fitzgerald
Attorneys for Plaintiffs                Todd R. Mendel (P55447)
101 East Lancaster Avenue, Suite 204    Erica Fitzgerald (P64080)
Wayne, PA 19087                  Attorneys for Plaintiffs
(484) 342-0700                   211 West Fort Street, 15th Floor
penny@gskplaw.com                Detroit, MI  48226
                                 (313) 965-9725
                                 tmendel@bsdd.com

                                 Dated:  August 6, 2014


CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2014, I caused the foregoing paper(s) to be electronically filed with the Clerk of the Court using the ECF System, which will send notification of such filing to all counsel of record.

/s/ Erica Fitzgerald
Erica Fitzgerald

442034v1