UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE ALLAN, et al.,

    Plaintiffs,

v.

REALCOMP II, LTD., et al.,

    Defendants.
                                           /

Case No. 10-cv-14046

HONORABLE STEPHEN J. MURPHY, III

**ORDER GRANTING MOTION FOR FINAL
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u> (document no. 222)**

From 2004 to 2007, Realcomp II, Ltd. ("Realcomp") prevented publicly accessible websites from receiving information on homes for sale in the southeast Michigan region listed by brokers using alternative contracting models with home sellers. The Federal Trade Commission ("FTC") found that Realcomp's rules constituted an illegal restraint of trade. *In re Realcomp II, Ltd.*, No. 9320, 2007 WL 6936319 (F.T.C. Oct. 30, 2009). The U.S. Court of Appeals for the Sixth Circuit affirmed the finding in *Realcomp II, Ltd. v. FTC*, 635 F.3d 815 (6th Cir. 2011). The plaintiffs, individual home sellers during the relevant time period, brought suit in antitrust, claimed that they paid more for brokerage services than they otherwise would have paid had the restrictions not been in place.

On March 5, 2014, after several years of proceedings, the parties agreed to settle the case. The proposed Settlement Agreement calls for Realcomp to create a common fund of $3,250,000 for the benefit of the class, the full amount to accrue by April 30, 2015. Class members who submit valid claims forms will be entitled to a share of the common fund, based on the commission paid to real estate brokers by each claimant, but in no case to exceed 25% of the total commissions paid by the claimant. *See* Settlement Agreement,

ECF No. 222-2.

The Court granted the motion for preliminary approval on May 29, 2014. *See* Order of Prelim. Approval, ECF No. 220. The parties now move for final approval of the class action settlement. The Court held a Civil Rule 23 fairness hearing on August 19, 2014. Having heard the parties, examined the briefing, and considered the objections, the Court will grant the motion and approve the Settlement Agreement.

## LEGAL STANDARDS

Civil Rule 23(e) requires a court to review whether a proposed class action settlement is fair, examining whether the parties engaged in arm's-length negotiations and arrived at the proposed settlement after thorough investigation and discussion, and that the proposed settlement is fair, reasonable, adequate, and in the best interests of the class. *See* Fed. R. Civ. P. 23(e); *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007). While the Court may preliminarily approve a settlement on the papers, it must hold a hearing on the matter and set a deadline for objectors to contest the fairness of the settlement. *See* Fed. R. Civ. P. 23(e) ("the court may approve [a settlement] only after a hearing"); *see generally Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009). Generally, a court's role in reviewing a settlement agreement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir. 1986) (quoting *Officers For Justice v. Civil Serv. Comm'n, etc.*, 688 F.2d 615 (9th Cir. 1982)). Specific questions a court may consider are:

"(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 497 F.3d at 631.

## DISCUSSION

I. <u>The Class and Preliminary Approval</u>

The Class, as defined in the Settlement Agreement, Section II.C is:

All purchasers of Exclusive Right To Sell real estate brokerage services for residential properties in the Realcomp MLS Service Area from May 1, 2004 through April 27, 2007.

For the purpose of preliminary approval, the Court previously adopted its reasoning in its March 30, 2013 Order, *see* Order Granting Mot. for Class Cert, ECF No. 199, and found the proposed class definition, and certification of the class, is appropriate. Because the Class was certified under Civil Rule 23(b)(3), a Class Member could opt-out. As such, the parties suggested, and the Court agreed to, an opt-out provision in the notifications. *See* Fed. R. Civ. P. 23(e)(4) (providing previously certified actions may have an additional opt-out notification); *see generally In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870, 881 (6th Cir. 2000). The notifications and opt-out provisions issued, *see* Mot. for Final Approval, Ex. C-G, ECF No. 222, and the Court concludes the distribution was reasonably calculated to provide fair notice to interested parties of the pendency of the action, settlement, attorneys' fees motion, and afforded them an opportunity to opt-out or object. *See* Fed. R. Civ. P. 23(e)(1); *see generally Doe v. Lexington-Fayette Urban Cnty. Gov't*, 407 F.3d 755, 761 (6th Cir. 2005).

II. The Settlement Agreement

The Settlement Agreement calls for Realcomp to create a common fund of $3,250,000 for the benefit of the class, the full amount to accrue by April 30, 2015. Class members who submit valid claims forms will be entitled to a share of the common fund, based on the commission paid to real estate brokers by each claimant, but in no case to exceed 25% of the total commissions paid by the claimant. The Settlement Agreement also provides for attorneys' fees in the amount of $1,083,333.33, the reimbursement of roughly $450,000 in expenses incurred by the plaintiffs' counsel, and representative awards of $12,500 to class representatives Eugene and Deborah Allen, Matthew and Traci Cavendash, and Keith Landen.[1] *See* Settlement Agreement.

III. Claims, Objections, Appearances

As of August 15, 2014, the parties have received 2610 claims forms regarding 2914 real estate transactions.[2] Only four opt-outs have been received, and only one objection has been received. *See* Supp. Filing, ECF No. 224. No objector appeared, either in person or through an attorney, at the fairness hearing.

IV. Analysis

The Court concludes the settlement should be approved.[3]

First, there is no evidence of, and no risk of, fraud or collusion, especially in light of

---

[1] The provisions related to attorneys' fees, costs, and representative awards will be granted via separate order.

[2] Based on the August 5, 2014 deadline to file claims, it is possible that more than 600 claims were filed after the deadline.

[3] The parties indicated they will file a motion for final disbursement of the settlement funds once the claims have been received and verified.

4

the parties' prior negotiation track record and the overall professionalism and skill with which the parties have litigated this case.

Second, considering the facts that the case has been ongoing for four years, is an antitrust class action, *see generally In re: NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998) ("Antitrust litigation in general, and class action litigation in particular, is unpredictable."), involves complex real estate transactions that lay people would not necessarily be able to easily understand, would require complex proofs and presentations, both factual and expert, and would involve consideration of a class of thousands; the Court concludes that this case is complex. Continued litigation would be expensive, and continued litigation would also likely consume a significant amount of the Court's docket and judicial resources.

Third, extensive discovery and other significant motion practice has occurred in this case, from September 2011, for at least a year. *See, e.g.*, Mot. for Final Approval 14-15, ECF No. 222 (listing actions taken during discovery).

Fourth, given that the lawsuit is premised on an underlying FTC finding of a restraint of trade, *see Realcomp II, Ltd.*, 635 F.3d at 836, and the fact that other civil actions have been prosecuted through a settlement involving multiple listing services, *see, e.g.*, *Boland v. Consol. Multiple Listing Servs., Inc., et al.*, No. 09-1335 (D.S.C.), the plaintiffs have a likelihood of success on the merits such that the Settlement Agreement resolves genuine legal and factual disputes. *See Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 497 F.3d at 632 ("Our task is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual

5

disagreement.").

Fifth, class counsel stated in their briefing and at the hearing that they believed the settlement is in the best interests of the class representatives, the class, and all others involved, and that they fully support the Settlement Agreement. In particular, they note that similar multiple listing services antitrust cases settled for a much smaller per-class member amount, whereas here each class member will be receiving possibly upwards of $500, a relatively substantial sum. *Cf. Logue v. West Penn Multi-List, Inc.,* No. 10-451 (W.D. Pa.); *Robertson v. Sea Pines Real Estate Companies, Inc., et al.*, No. 11-159 (D.S.C.).

Sixth, out of a possible claimant pool of more than 2000 people, only four have opted out, *see* Mot. for Final Approval Ex. B, ECF No. 222-3;[4] and only one objection has been filed, *see* Objection, ECF No. 221.[5] In contrast, as of August 15, 2013, 2610 claims forms have been filed. *See* Supp. Filing. This demonstrates a strong agreement by absent class members with the overall fairness of the Settlement Agreement.

Seventh, settlement would serve the public interests of judicial economy and providing for the continued prosecution of antitrust civil actions. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (There is "a strong public interest in encouraging settlement of complex litigation and class action suits," and settlement of "antitrust action serves the public interest by ensuring effective enforcement of the antitrust laws and deterrence of anti-competitive conduct in the marketplace.") (citing *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Minnesota Mining*

---

[4] Having opted out, Fatmeh Hadous, Gary Severinsen, Paula Wilder, and Alex Tardiff will therefore not be bound by this order.

[5] The one objection, filed by Brian Maranette, does not raise legal arguments against the reasonableness or fairness of the Settlement Agreement, and the Court overrules it.

6

*& Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311, 318 (1965).

Accordingly, the Court will grant the motion and approve the Settlement Agreement.

V.   Release and Enforcement

The releases contained in the Settlement Agreement are expressly incorporated herein in all respects and, when effective under the terms of the Settlement Agreement, shall operate as a full and final general release of all claims raised by the Complaint, and forever discharge the released parties from any claims, liabilities, issues, or matters arising from or related to the Released Claims. Nothing in this order shall preclude any action to enforce the terms of the Settlement Agreement.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion for final approval of class action settlement (document no. 222) is **GRANTED**.

**IT IS FURTHER ORDERED** that, having opted out, Fatmeh Hadous, Gary Severinsen, Paula Wilder, and Alex Tardiff are **EXCLUDED** from the Settlement Agreement and are not bound by anything therein.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 4, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 4, 2014, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager